**SCURLOCK OIL COMPANY, Appellant,**

v.

**Buford JOFFRION, Appellee.**

No. 112.

Court of Civil Appeals of Texas.

Tyler.

April 29, 1965.

Rehearing Denied May 27, 1965.

Ruff Wall, LeRoy LaSalle, Carthage, Vinson, Elkins, Weems & Searls, by Jarrel D. McDaniel and Ewing Werlein, Jr. (on appeal only), Houston, for appellant.

Tom Bankhead, Carthage, for appellee.

DUNAGAN, Chief Justice.

The appellee, Buford Joffrion, the plaintiff below, brought this action against Scurlock Oil Company, alleging that said oil company trespassed upon and damaged the plaintiff's surface leasehold estate by laying two oil gathering pipelines over a portion of the plaintiff's surface lease. The case was submitted to the jury on Special Issues, and based on the verdict thereon, the trial court awarded judgment for the plaintiff, Buford Joffrion, for both actual and exemplary damages, and the defendant, Scurlock Oil Company, was additionally enjoined to desist from the use, maintenance or operation of the subject pipelines and to "desist from not removing the two pipelines" and restoring the lands from which they are removed within six (6) months from the date this judgment shall become final. It is from this judgment that the appellant brings this appeal.

In September, 1959, the fee owners of a certain tract of land in Panola County, generally known and referred to as the "S. M. Burns Estate Land," and appellee entered into a lease from the 1st day of January, 1960, for a term of twelve years, which provided that appellee would have a lease on said land as to the surface rights only. The consideration provided for was $1.00 per acre per year. Paragraph X of said lease provided that the lessors retained all of the oil, gas and minerals in, on and under such lands, together with the rights of ingress and egress to and from any wells or mines for the purpose of developing, exploring, or producing oil, gas or other minerals. The lease was subject to all existing oil, gas and mineral leases, easements and rights-of-way. The tract consisted of about 845 acres of land. The appellee intended to use the land for purposes of a dairy business.

At the time the surface lease agreement was negotiated, there were three (3) wells on the property, which were subject to an oil, gas and mineral lease subsequently assigned to the Texas Company (now Texaco Inc.). The oil and gas leases granted the lessee "all easements, privileges and rights useful or convenient for lessee's operations thereon, or on adjacent lands, including the right to lay pipelines * * *." Appellee did not show whether Texaco had any leases on adjacent lands. After the surface lease agreement was signed, but prior to the time that Scurlock Oil Company entered upon the land, there was a period of about a year and a half of very active oil exploration and production upon the subject lands by Texaco Inc. Thus, when Scurlock Oil Company first entered upon the land in 1961, there were at least seventeen (17) wells upon the land. Roads, pipelines, slush pits and other attendant changes had been made in the surface of the land for the construction and use of these numerous wells.

The present case is the second suit Joffrion brought for damages to his leasehold on the subject land. The first suit was filed on September 1, 1961, and the appellee in this case, Buford Joffrion, instituted suit

in the 123rd Judicial District Court of Panola County, Texas, against Texaco Inc. and alleged in his petition that Texaco had negligently and unreasonably used the premises for the purposes of developing the mineral estate; that Texaco had located seventeen (17) oil wells upon the premises; that Texaco had approximately 32 oil and gas pipelines upon the premises and that all of the pipelines were constructed and left lying on the surface of the land; that Texaco had drained waste oil and other waste petroleum into a spring-fed creek near certain of its wells and that this had caused the pollution of the water and rendered it unfit for drinking purposes for appellee's cattle; and that Texaco had unnecessarily and unreasonably destroyed pine timber of trees on the premises. All of these and other acts and omissions on the part of Texaco, plead the appellee, had deprived him of the use of the surface of his dairy cattle business and further, Texaco had deprived him of this use of the premises for the remaining term of his twelve-year lease.

By trial amendment in that suit, the appellee later modified his petition against Texaco to allege that Texaco's acts "have rendered the water supply on such premises unfit and unsafe for pasturing cattle thereon, and has interfered with Plaintiff's use of same and constitutes a negligent and unreasonable use of the premises, depriving the Plaintiff of the use of same for ranching and dairy business, and since the commencement of Plaintiff's lease to the date of filing of this suit on September 1, 1961, the value of the use of Plaintiff's leasehold interest in the land in question has been reduced in the amount of $23,000.00 to Plaintiff's damages in said amount for which the Defendant is liable and indebted unto the Plaintiff. Further, by reason of such acts and conduct of the Defendant, the value of the use of Plaintiff's leasehold interest in the land in question has been reduced from the date of filing of Plaintiff's suit on September 1, 1961, until the date of the termination of said lease on January 1,

1973, in the amount of $50,000.00 to Plaintiff's damage in said amount, for which the Defendant is liable and indebted to the Plaintiff in said amount."

The appellee was successful in his suit against Texaco Inc. He received judgment based upon jury findings for $3,300.00 for past and future damages to his leasehold estate. One of the findings was:

### "SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that such escaped salt water and petroleum substances polluted the streams and water supplies so as to make the land in question unfit and unusable for ranching and dairy use?

"Answer: 'Yes'."

Subsequently, the case was appealed by Texaco Inc., and judgment was affirmed by the Texarkana Court of Civil Appeals, Texaco, Inc. v. Joffrion, 363 S.W.2d 827. Texaco Inc. paid in full the judgment and costs.

On May 7, 1962, only 87 days after judgment was entered in favor of the appellee against Texaco Inc., the appellee filed this cause of action against appellant, alleging that appellant had injured his leasehold estate. The leasehold estate involved in the case at bar is the same as that involved in appellee's suit against Texaco Inc. Upon trial, appellee asserted that appellant had rendered the land unfit for dairying purposes.

In the case at bar, appellee in his first amended original petition alleged in part as follows:

"Plaintiff would show that by virtue of the unlawful trespass by the Defendant that his leasehold estate on such premises has been rendered unfit and unsafe for the dairy business of the Plaintiff, and he had been deprived of the value of the use of said leasehold interest in said land in question,

since the date of such trespass to the date of this trial, in the amount of $6,000.00 and that by virtue of the unlawful trespass of the Defendant the value of the use of Plaintiff's leasehold estate for the remainder of the term of Plaintiff's lease has been reduced in the amount of $2,000.00 per year, totaling additional damages of $16,000.-00. * * *" In the case at bar the jury made the following findings:

"SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that the value of the use of Plaintiff, Buford Joffrion's, surface leasehold estate was reduced by the construction and operations of the Defendant, Scurlock Oil Company's 6" pipelines constructed in August of 1961 and January of 1962.

"Answer: Yes.

"SPECIAL ISSUE NO. 3

"What amount of money, if any, if paid now will reasonably compensate the Plaintiff, Buford Joffrion, for such reduced value of the use, if any, from and during August of 1961 to the present date.

"Answer: $3,000.00.

"SPECIAL ISSUE NO 4

"Do you find from a preponderance of the evidence that the value of the use of Plaintiff, Buford Joffrion's surface leasehold estate from the present date to the remainder of the surface lease term to January 1, 1973, has been reduced by the construction and operations, to this date, of the Defendant, Scurlock Oil Company's 6" pipelines in question.

"Answer: Yes.

"SPECIAL ISSUE NO. 5

"What amount of money, if any, if paid now, will reasonably compensate

the Plaintiff, Buford Joffrion, for such reduced value, if any, from this date through the remainder of the surface lease term to January 1, 1973?

"Answer: $1,000.00."

The jury also awarded to the plaintiff the sum of $6,000.00 as exemplary damages.

The appellant offered in evidence in the trial court the following proceedings in the appellee's prior successful suit against Texaco Inc.: Plaintiff's Original Petition; Plaintiff's Trial Amendment; Charge of the Court and the Jury's Answers to Special Issues; Judgment of the Trial Court; the Opinion of the Texarkana Court of Civil Appeals, and Mandate. The trial court refused to admit into evidence these proceedings and appellant by its Points of Error Nos. 1–6 says this action on the part of the trial court constitutes error. In its Point of Error No. 7 the appellant complains of the trial court's error in limiting the appellant's right of cross-examination of the appellee concerning his position in the Texaco suit.

Since Points of Error Nos. 1–7 all relate to the same basic problem, the appellant discusses them together and the court will likewise discuss and dispose of them together.

The appellant contends that the proffered evidence constituted highly material and relevant admissions by appellee against his interest regarding ultimate issues of fact litigated in the instant case, rebutting his contentions of causation and damage, and to show appellee sought to recover twice for the value of his lease. The appellant further contends that it was entitled to present to the jury evidence that the appellee— only months before he filed this suit against appellant—had plead that Texaco Inc. had deprived him of the use of his lease for his dairy business for the remainder of his twelve-year lease. That the entire suit against Texaco Inc. by the appellee was an admission by the appellee against interest in the present case. That each of the vari-

ous exhibits as above named offered by the appellant and refused by the trial court was an admission against interest and was admissible against appellee.

A summary of the evidence in the case of Texaco, Inc. v. Joffrion was found by the Court of Civil Appeals to be as follows:

"The following summary is the evidence in its most favorable aspect supporting the jury findings. Texaco drilled and operates seventeen wells producing oil from the 844.3 acre tract. Oil and salt water pits were excavated that were not large enough to hold the oil, petroleum substances and salt water run into them in the course of production. The pits overflowed and these substances escaped onto the ground and into the creeks and water supply. Approximately 100,000 feet of pipe line was laid on the ground, the lines were 'scattered', crossed open fields and hay meadows, and did not follow the roads to the wells or any particular pattern. The fence enclosing the land was cut in six different places, but no gates or cattle guards were installed for approximately fifteen months. Roads to well sites were graded, abandoned, and new roads built in different locations. The entire tract was rendered useless for dairying, pasturing, cultivation of crops and harvesting of hay by Texaco's use of the surface. The leasehold interest had a value of $5,000.00 per year for dairying purposes."

We think the applicable rule of law was stated by the Supreme Court in the case of Campbell v. McLaughlin, 280 S.W. 189 (S.Ct.) 1926, a trespass to try title suit. In that suit the plaintiff was suing to recover some 600 acres of land. The defendant had already recovered these lands in a prior suit in which he was a successful intervenor, but where the plaintiff in the present suit had not been a party. In the course of trial, the defendant introduced in evidence as muniment of title that part of the judgment from the prior suit in which it was rendered that the defendant should recover the lands here involved. Some of the findings made by the jury in the first case, however, were now inconsistent with the position which the defendant was taking against the plaintiff in the second suit. Thus, the plaintiff sought to introduce these special findings of the jury in the prior suit to which the defendant was a party. The trial court refused to admit these special findings. On appeal the Supreme Court held that the trial court committed reversible error by refusing to admit into evidence the jury's findings from the first case. The court held that the evidence offered by the plaintiff in the second case was an admission by defendants against their interest on a most material question of fact and, thus, the evidence was clearly admissible "as against any objection that could have been urged." The Supreme Court held that:

" * * * Such verdict is not to be admitted upon any principle of estoppel or res adjudicata, for of course a judgment has no binding force upon persons who are not parties or privies as to any fact upon which such adjudication was made. Such testimony is admissible as an ordinary admission of a party against interest, and it can make no difference what the precise form of the admission may assume. Any act, whether by oral statement, written pleadings, or conduct, whatsoever, by a person or by one authorized to speak or act for him, which fairly may be interpreted as an admission against interest upon a material matter of court inquiry, may be shown in evidence. * * * *"

The court further stated that:

" * * * The rule is well settled in Texas that abandoned pleadings containing material admissions against interest are admissible in evidence, and such admissibility does not depend up-

on their being signed or sworn to by the party sought to be bound. \* \* \* There is no reason for holding that statements or conduct of a party in the progress of a trial, to have evidentiary force as an admission of fact, must necessarily be confined to the pleadings in the case. \* \* \*"

In the case of Swilley v. McCain, 374 S.W.2d 871, the Supreme Court said:

"\* \* \* We assume without deciding that in view of the position taken by the Swilleys in the Wagers case, the judgments, jury verdicts and other papers filed in both of the former suits were properly received in evidence as admissions against interest.", citing Campbell v. McLaughlin, supra, as its authority. See also the case of Southern Lumber Co. v. Kirby Lumber Corporation, 181 S.W.2d 859, (Tex.Civ.App.) 1944, writ refused, w. m.; Haywood v. Texas Employers Insurance Association, 383 S.W.2d 866 (Tex.Civ.App.) 1964, no writ history.

■ It is now well settled in this state that abandoned pleadings, or pleadings in another action, thereof in another court and between different parties, are admissible against the pleader and may contain material admissions against interest. Wise v. Haynes, 103 S.W.2d 477 (Tex.Civ.App.) 1937, no writ history; Campbell v. McLaughlin, supra; Corn v. Crosby County Cattle Co., 25 S.W.2d 290 (Tex.Com.App.) 1930; Moore v. Horn, 359 S.W.2d 947 (Tex.Civ.App.) 1962, writ refused, n. r. e.

■ The position taken here by Joffrion is clearly inconsistent with the proceedings instituted by Joffrion against Texaco Inc. and the prior pleadings were admissible as admissions putting Joffrion's present claim in its true light.

We think the court should have admitted the proffered evidence as admissions against interest. Appellant's Points 1–7 are sustained.

■ We next come to the consideration of appellant's Points 12, 13, 14 and 15. Points Nos. 12, 13 and 14 are all referrable to one central point; that is, that the trial court erred in failing and refusing to include in its charge any reference to the good faith and belief of right in appellant in entering into the S. M. Burns Estate Land in connection with appellee's claim for exemplary damages. By its Point 15 appellant complains of the court's refusal to submit to the jury its requested issue as to whether appellant's employees acted with malice toward plaintiff.

Appellant, before going upon the land in question, obtained right-of-way agreements from the S. M. Burns Estate, the owners of the land. Appellant by its pleadings and evidence in the lower court contended that it was the belief of its agents and officers that it had a right to go upon the land under this agreement. In laying the original lines, upon appellee's objections thereto, the appellant instructed its agent to pay appellee damages for the construction of the pipelines across the Burns Estate, and for such damages paid him the sum of $1,500.00. Appellant contended that in so paying said sum of $1,500.00, it obtained a letter agreement (which is in evidence) waiving any damages crossing the land in question, which appellant thought was sufficient to allow it to lay the lines in question. Appellant says it has always stood ready, willing and able to pay appellee any actual damages suffered to his grazing and surface lease by its activities upon the Burns Estate Land. Appellant contends that under its pleadings and evidence it was entitled to have submitted to the jury special issues inquiring as to its good faith in placing the pipelines across the Burns Estate Land, as to whether its employees acted with malice toward appellee, and the trial court erred in not submitting such issues.

■ Appellee alleged that the acts of appellant in trespassing were willful, deliberate and wrongful, thus entitling him to

exemplary damages. Appellant denied these allegations and affirmatively pleaded that it entered rightfully under permission granted by the S. M. Burns Estate, the owners of the land herein involved and pursuant to an agreement previously entered into with appellee. Moreover, the appellee alleged that appellant committed a trespass and it has been held that "a trespass" is a willful or intentional wrong. Michels v. Crouch, 122 S.W.2d 211 (Tex.Civ.App.) 1938, no writ history.

We think the appellant by its pleadings and evidence raised the issues of a good faith entry and as to whether the entry complained of was either malicious or willfully made.

■ It is clear under the Texas authorities that exemplary damages for injuries to real property will not be awarded in the absence of the existence of circumstances of aggravation. The evidence must show some element of fraud, malice or oppression, and the conduct of the defendant must be actuated by or accompanied with some evil intent or result from such gross negligence that the same may be regarded as an intentional injury. Upham Gas Co. v. Smith, 247 S.W.2d 133 (Tex.Civ.App.) 1952, no writ history; Holland v. Lesesne, 350 S.W.2d 859, 865 (Tex.Civ.App.) 1961, writ refused, n. r. e.

■ Damages by way of punishment, as the general rule, may not be awarded where it appears that the defendant acted in good faith or without wrongful intention or in the good faith belief that he was exercising his right. Erie Telegraph & Telephone Co. v. Kennedy, 80 Tex. 71, 15 S.W. 704 (1891); Pennock v. Texas Builders' Supply Co., 193 S.W. 760 (Tex.Civ.App.) 1917, no writ history; Cantrell v. Broadnax, 306 S.W.2d 429 (Tex.Civ.App.) 1951, writ refused, n. r. e.; Upham Gas Co. v. Smith, supra; Wilson v. Texas Co., 237 S.W.2d 649 (Tex.Civ.App.) 1951, writ refused, n. r. e.

■ In the case under consideration appellee alleged that appellant's conduct was willful, wrongful and unlawful. In order to recover exemplary damages, the appellee must not only plead, but he must prove that appellant acted with malice. Alamo Boiler & Machine Works v. Phillips, 215 S.W.2d 933 (Tex.Civ.App.) 1948, no writ history. It is fundamental that plaintiff must recover, if at all, upon the cause of action alleged. Michels v. Crouch, supra. Appellee made no request for an issue to be submitted to the jury covering this independent ground of recovery. As such, unless it is conclusively established under the evidence, it is appellee's duty to request the submission of the same or else suffer a waiver of this ground of recovery. Alamo Boiler & Machine Works v. Phillips, supra; Rule 279, Texas Rules of Civil Procedure.

■ If an ultimate issue essential to the claim or defense and necessary to form the basis for a judgment is pleaded and raised by the evidence, the court upon proper request from the party relying upon same, should submit such issue for determination by the jury. Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, 1940; Texas General Indemnity Co. v. Scott, 152 Tex. 1, 253 S.W.2d 651, 1953.

The burden upon the appellee is set out in 56 Tex.Jur.2d, Trespass, pages 39–41, Section 33:

"Where actual damage has been sustained, and where a wilful or intentional entry on the plaintiff's land or premises has been pleaded and proved, exemplary or punitive damages may be recovered in an action of trespass. * * *"

Wrongful purpose or intention is determinative of appellant's liability for exemplary damage. As stated in Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709, 1943; "Regardless of the exception which

is used to describe it, the purpose or intention of the defendant is determinative of his liability for exemplary damages." See 56 Tex.Jur.2d page 16, Section 8.

■ Under the record in this case, if for no other reason, by virtue of the holding in Holland v. Lesesne, supra, appellant's recovery of exemplary damages could not stand because there was no finding that the trespass was either malicious or willful. A finding that the trespass was either malicious or willfully done is essential to a recovery of exemplary or punitive damages.

Appellee counters with numerous contentions why these points should not be sustained. Without deciding the merit of appellee's contentions in view of the disposition we make of this case, we suggest that upon a retrial, if appellee supports his allegations by evidence and requests the submission, the court should submit to the jury the issue of willfulness, placing the burden of proof thereon upon appellee. Alamo Boiler & Machine Works v. Phillips, supra. It is our view that unless the appellee obtains a favorable finding upon the issue, he cannot recover exemplary damages herein. Holland v. Lesesne, supra.

In view of another trial, we further suggest that if appellant, as a defense, pleads its good faith in its conduct made the basis of the suit and if appellant supports such allegations with evidence, this issue upon proper request by appellant should be submitted to the jury. It constitutes an inferential rebuttal issue and a favorable finding thereon would negative completely the existence of a material element of appellee's cause of action for exemplary damages. Security State Bank v. Spinnler, 55 S.W.2d 128 (Tex.Civ.App.) 1932, writ dismissed; Ulander v. Orman, 26 S.W. 1103 (Tex.Civ.App.) 1894, no writ history; Holland v. Lesesne, supra; Alamo Boiler & Machine Works v. Phillips, supra.

In view of the reversal and remand of this cause, it is unnecessary for us to pass upon appellant's Assignment of Error No. 16. Neither will we pass upon appellant's Points 8, 9, 10 and 11, as on the next trial the evidence may eliminate the questions raised thereby.

Judgment reversed and remanded for the reasons hereinabove stated.